**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**JIM R. HUNTER, Personal Representative**
**of the estate of Robert C. Ramsey, deceased,**

      **Plaintiff,**

**v.**                                             **No. 11-cv-0954 SMV**

**ADMINISTRATOR OF THE LUNA COUNTY**
**DETENTION CENTER;**
**LUNA COUNTY DETENTION CENTER;**
**BOARD OF COUNTY COMMISSIONERS, LUNA COUNTY,**
**DEMING, NEW MEXICO;**
**LUNA COUNTY MANAGER;**
**JOHN DOES, unknown;**
**JANE DOES, unknown; and**
**OFFICERS OF LUNA COUNTY DETENTION CENTER,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER GRANTING COUNTY'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND COMPLAINT

THIS MATTER is before the Court on the Board of County Commissioner's [sic] Motion to Dismiss [Doc. 3] and Memorandum in Support of Board of County Commissioner's [sic] Motion to Dismiss [Doc. 4] (collectively "Motion to Dismiss"), filed on October 26, 2011.  On November 8, 2011, Plaintiff filed his Memorandum in Opposition to Board of County Commissioner's [sic] Motion to Dismiss [Doc. 9] ("Response to Motion to Dismiss").  On November 16, 2011, Defendant Board of County Commissioners ("the County") filed its Reply [Doc. 12] ("Reply to Motion to Dismiss").  Also before the Court is Plaintiff's Motion to Amend Complaint [Doc. 18] and his First Amended Complaint for Civil Rights Violations [Doc. 18-1] ("Proposed Amended Complaint"),

1

filed on January 27, 2012. On February 10, 2012, the County filed its Response [Doc. 20] ("Response to Motion to Amend"). Plaintiff filed his Reply [Doc. 21] ("Reply to Motion to Amend") on February 23, 2012. The Court, having considered the parties' briefs, relevant case law, and being otherwise fully advised in the premises, finds as follows:

The County's Motion to Dismiss [Doc. 3] should be GRANTED for failure to state a claim upon which relief can be granted; and

Plaintiff's Motion to Amend [Doc. 18] should be DENIED in part as to Defendant Board of County Commissioners for futility and GRANTED in part as to the remaining Defendants.

## I.      THE COUNTY'S MOTION TO DISMISS THE ORIGINAL COMPLAINT

### A.      FACTUAL BACKGROUND

This action arises out of Robert C. Ramsey's imprisonment at the Luna County Detention Center ("LCDC") in 2008. Complaint for Civil Rights Violations [Doc. 1-2] ("Complaint") at 6, ¶ 9. On April 17, 2008, Mr. Ramsey pleaded guilty in New Mexico state court to driving while under the influence. Judgment and Order Partially Suspending Sentence [Doc. 4-1] Ex. 1 ("Judgment") at 1; Complaint [Doc. 1-2] at 6, ¶¶ 4, 6.[1] His guilty plea was entered pursuant to a plea and disposition agreement. Complaint [Doc. 1-2] at 6, ¶ 6. Pursuant to the plea agreement, the state district court sentenced Mr. Ramsey to eighteen months' incarceration but suspended all but six

---

[1] Generally, a court must convert a motion to dismiss into a motion for summary judgment when matters outside the complaint are relied upon because a motion to dismiss considers the conduct alleged in the complaint, whereas a motion for summary judgment considers the evidence upon which the allegations are based. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005). However, a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss where the document's authenticity is not in dispute. *Id.* at 1254. The Court may thus reference to the copy of the state court's Judgment [Doc. 4-1], attached to the County's Motion to Dismiss as an exhibit, because its authenticity is not disputed.

months of the sentence.   Complaint [Doc. 1-2] at 6, ¶ 11; Judgment [Doc. 4-1] at 1–2. The plea agreement expressly provided that Mr. Ramsey was to be incarcerated at LCDC. Complaint [Doc. 1-2] at 6, ¶ 8; Judgment [Doc. 4-1] at 2. Although the sentence was to begin on June 24, 2008, the Judgment was not filed until June 30, 2008. Complaint [Doc. 1-2] at 6, ¶ 10; Judgment [Doc. 4-1] at 1, 2.

Mr. Ramsey reported to LCDC on June 24, 2008, pursuant to the terms of his plea agreement.   Complaint [Doc. 1-2] at 6–7, ¶ 9.   He was held continuously at LCDC until September 26, 2008. *Id.* at 7, ¶¶ 13–14. On the evening of September 26, 2008, he was taken to the emergency room at Mimbres Memorial Hospital ("Mimbres") for treatment of injuries allegedly "consistent with his having been beaten, severe head trauma." *Id.* at 7, ¶¶ 14–16.   He was subsequently transported to Memorial Medical Center. *Id.* at 7, ¶ 18.   X-rays and MRIs taken at both hospitals showed that Mr. Ramsey had a fractured rib and head trauma with possible brain injury. *Id.* at 7, ¶ 19. He was released from the hospital to his home on a date uncertain, where he received therapy for the brain injury until the middle of 2009. *Id.* at 7, ¶¶ 20–21. He was found dead in his home on July 1, 2010. *Id.* at 8, ¶ 23. An autopsy revealed evidence of the brain injury, the fractured rib, and long-term alcoholism. *Id.* at 8, ¶ 25.

Plaintiff filed the present action in state court on September 23, 2011. *Id.* at 1. Defendants removed to federal court on October 25, 2011. Notice of Removal [Doc. 1] at 1.  Plaintiff alleges that Mr. Ramsey's Fifth and Eighth Amendment rights under the U.S. Constitution were violated and seeks damages pursuant to 42 U.S.C. § 1983. Complaint [Doc. 1-2] at 1.

In particular, the Complaint alleges that the Defendants violated Mr. Ramsey's Fifth Amendment rights by falsely imprisoning him at LCDC from June 24 to 29, 2008 (the five days before the Judgment was filed). *Id.* at 8, ¶ 27.  Moreover, the Complaint alleges that Mr. Ramsey was falsely imprisoned for the entire duration of his incarceration because he was incarcerated in a county jail rather than in a New Mexico Department of Corrections ("DOC") facility. *Id.*  This claim is based on NMSA 1978, § 31-20-2(A), which mandates that persons sentenced to more than one year's incarceration be placed in the custody of the DOC. *Id.* at 6, 8, ¶¶ 11, 29.

As to Plaintiff's Eighth Amendment claim, the Complaint alleges that the Defendants are liable for inflicting injuries, or allowing the infliction of injuries, upon Mr. Ramsey while he was incarcerated at LCDC in violation of his Eighth Amendment right against cruel and unusual punishment. *Id.* at 9, ¶¶ 33–34.

## B.    STANDARD FOR MOTION TO DISMISS

A court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).   Federal Rule of Civil Procedure 8 provides that a complaint filed in federal court need contain only a "short and plain" statement of (1) the grounds supporting the district court's subject matter jurisdiction, (2) "the claim showing that the pleader is entitled to relief," and (3) the demand for the relief that the pleader seeks.  Fed. R. Civ. P. 8(a).  The complaint must "provide enough factual allegations for a court to infer potential victory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

For Plaintiff's complaint to survive a motion to dismiss, his claims must be nudged "'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although a court must accept as true all of the allegations in a complaint, deference is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)).

### C. FALSE IMPRISONMENT CLAIM

#### 1. ARGUMENTS

The County argues that Mr. Ramsey's incarceration was lawful, and that even if it were not, Plaintiff's false imprisonment claims are time-barred by the relevant statute of limitations. Motion to Dismiss [Doc. 4] at 3, 6; Reply to Motion to Dismiss [Doc. 12] at 1–3. Plaintiff argues that the statute of limitations was tolled for the duration of Mr. Ramsey's imprisonment, and therefore, his claim is not time-barred. Response to Motion to Dismiss [Doc. 9] at 3. The bulk of the briefing on the false imprisonment claim addresses the statute of limitations and its tolling. *See* Motion to Dismiss [Doc. 4] at 2–3; Response to Motion to Dismiss [Doc. 9] at 3; Reply to Motion to Dismiss [Doc. 12] at 2–3.

5

2.      **STANDARD**

A § 1983 claim for false imprisonment ends when the victim is held pursuant to the institution of "legal process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007).  After the institution of legal process, there can be no claim for false imprisonment under § 1983. *Mondragón v. Thompson*, 519 F.3d 1078, 1083 (10th Cir. 2008).  Although it is not always clear when the institution of legal process occurs, the Tenth Circuit has held that it must occur "at some point after arrest, and certainly by the time of trial."  *Id.* at 1082 (citing *Pierce v. Gilchrist*, 359 F.3d 1279, 1285–86 (10th Cir. 2004)).[2]  For example, legal process is instituted once a defendant admits wrongdoing and is sentenced. *See Sanchez v. Harrison*,  No. 07-2115, 242 F. App'x 502, 503–04, 2007 WL 1969685 (10th Cir. July 9, 2007) (unpublished) (sentencing for a probation violation constituted the institution of legal process).

3.      **ANALYSIS**

The original Complaint fails to allege facts that support a claim for false imprisonment. Mr. Ramsey pleaded guilty in the underlying criminal case and was sentenced on June 17, 2008. Complaint [Doc. 1-2] at 6, ¶ 6; Judgment [Doc. 4-1] at 1.  Legal process was instituted, at the latest, on the date of his sentencing.  The imprisonment that Plaintiff alleges violated Mr. Ramsey's constitutional rights began on June 24, 2008—well after the institution of legal process. Judgment

---

[2] Other examples of legal process include: arraignment for charges or binding over by a magistrate, *Wallace*, 549 U.S. at 389 (2007), an arrest made pursuant to a warrant, *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008), and a probable cause hearing made after a warrantless arrest, *Young v. Davis*, 554 F.3d 1254, 1257 (10th Cir. 2009).

[Doc. 4-1] at 1.[3]  Plaintiff has failed to allege facts that could give rise to a false imprisonment claim against the County because Mr. Ramsey's imprisonment did not begin until after the institution of legal process.  *See Sanchez*, No. 07-2115, 242 F. App'x at 503–04.  It is not necessary to analyze when the statute of limitations for false imprisonment began to run because there was no false imprisonment. *Id.*

Moreover, Plaintiff's reliance on NMSA 1978, § 31-20-2(A) is misplaced. The statute provides, in relevant part, that:

> [p]ersons sentenced to imprisonment for a term of one year or more shall be imprisoned in a corrections facility designated by the corrections department, *unless . . .* a portion of the sentence is suspended so as to provide for imprisonment for not more than eighteen months; then the imprisonment may be *in such place . . . as the sentencing judge, in his discretion, may prescribe . . . .*

NMSA 1978, § 31-20-2(A) (emphases added).  The statute clearly bestows upon the sentencing judge the discretion to incarcerate a person in a non-DOC facility when, as was the case with Mr. Ramsey, the original sentence is for one year or more, but a portion of the sentence is suspended so that the resulting sentence is less than eighteen months.  Here, the district court sentenced Mr. Ramsey to eighteen months, but then suspended all but six months. Judgment [Doc. 4-1] at 2.  Thus, § 31-20-2(A) did not prevent the district court from ordering Mr. Ramsey to serve his sentence at LCDC.

---

[3] Legal process was probably instituted in Mr. Ramsey's criminal case even earlier than the date of his sentencing, for instance, when arrested pursuant a warrant; or if arrested without a warrant, then when he had a probable cause hearing; or when he was bound over by a magistrate and arraigned on charges.  However, the parties did not brief when or if any of these things happened, nor are these stages of Mr. Ramsey's criminal proceedings the basis of the present action.  Therefore, the Court attributes Mr. Ramsey's sentencing as the institution of legal process. *See Sanchez*, No. 07-2115, 242 F. App'x at 503–04 (unpublished) (sentencing was the institution of legal process).

Even if the statute were applicable, Mr. Ramsey waived any right he had to complain about serving his sentence at LCDC rather than a DOC facility. The Judgment specifically provided for his being incarcerated at LCDC. Judgment [Doc. 4-1] at 2. Although Mr. Ramsey did not sign the Judgment, his attorney did. *See City of Wichita v. Sw. Bell Tel. Co.*, 24 F.3d 1282, 1288 (10th Cir. 1994) (an attorney is clothed with sufficient apparent authority to bind a client for services that are routinely and directly connected with the representation).

For all the foregoing reasons, the original Complaint fails to state a claim for false imprisonment.

### D.     CRUEL AND UNUSUAL PUNISHMENT CLAIM

#### 1.     ARGUMENTS

The County argues that the Complaint fails to allege sufficient facts to support a cruel and unusual punishment claim against the County. Motion to Dismiss [Doc. 4] at 6. The County argues further that the Complaint fails to state a claim because it does not make clear exactly who is alleged to have done harm to Mr. Ramsey. *Id.* at 6–7. Finally, the County argues that the Complaint fails to state a claim to the extent it seeks to hold the County vicariously liable for its employees' actions. *Id.* at 7. The County argues that it may be held liable for a constitutional violation only if it had a practice or policy that led to or allowed the unconstitutional acts. *Id.* at 7–8.

In his Response, Plaintiff makes no attempt to rebut the County's argument but merely states that his Motion to Amend would "clarify his position regarding the liability of each named defendant." Response to Motion to Dismiss [Doc. 9] at 4. The County replies by underscoring the fact that Plaintiff does not allege the County had a policy or practice that led to a constitutional

8

deprivation, without which the County cannot be held liable. Reply to Motion to Dismiss [Doc. 12] at 4.

### 2.     ANALYSIS

Plaintiff's Complaint fails to allege facts that would support a claim against the County for violating Mr. Ramsey's Eighth Amendment rights.  First, respondeat superior liability does not apply to governmental entities in § 1983 actions. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 402–03 (1997).  Thus, Plaintiff's claims against the County based on respondeat superior fail.  Second, the Complaint does not allege that the County has a "policy or custom" that led to a constitutional deprivation, which is a necessary element for holding a municipality liable for its employees' conduct under § 1983.  *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

The Court, therefore, will grant the County's Motion to Dismiss [Doc. 3].

## II.     PLAINTIFF'S MOTION TO AMEND COMPLAINT

### A.     NEWLY ALLEGED FACTUAL BACKGROUND

The Proposed Amended Complaint seeks to remedy the deficiencies in the original Complaint.  It alleges with more specificity the type of injury that Mr. Ramsey allegedly suffered.  "[The doctors at Mimbres] determined that Ramsey had been over-medicated, and that he suffered from Dilantin toxicity, which caused his lack of coordination, slurred speech, dizziness and led to the falling noted at LCDC." Proposed Amended Complaint [Doc. 18-1] at 4, ¶ 21.  LCDC administered Mr. Ramsey's medications, and Plaintiff concludes that LCDC was "solely responsible

for the Dilantin toxicity and injuries received from the falls suffered by Ramsey." *Id.* at 4, ¶ 22. The

following injuries were observed while Mr. Ramsey was in the hospitals:

> (1) head laceration, right rear . . . ; (2) blackened left eye; (3) soft
> tissue swelling at the site of the laceration; (4) bruising of right lateral
> thigh area, hip; (5) joint swelling in left elbow; (6) swollen right foot;
> (7) softness in abdomen; (8) bump on left side of head, small
> hematoma [on] left side of forehead; (9) MRI showing parenchymal
> atrophy and extensive small vessel damage to the brain; (10) no
> history of falls in past six months . . . .

*Id.* at 5, ¶ 24.

The Proposed Amended Complaint then alleges that "LCDC claimed [these injuries] to have

been the result of a fall, but [they] appeared to be more consistent with a beating." *Id.* at 11, ¶ 3.

Apparently, Mr. Ramsey reported that he "had been having problems with one of the guards on the

night shift at LCDC" prior to his September 26, 2012 injury. *Id.* at 5, ¶ 25.

Moreover, Plaintiff asserts that LCDC has a "policy and practice of employment of

individuals who have no previous training in law enforcement" and allows newly hired individuals

to be "trained on the job by other employees of LCDC, many of whom had themselves received the

same on-the-job training without formal training in law enforcement." *Id.* at 9–10, ¶ 3.  He argues

that such hiring policy is in conflict with NMSA 1978, § 33-3-28(B), which "appears to require all

individuals not employed by an independent contractor whose job allows them authority to act as

peace officers to attend the basic training program for law enforcement officers at the New Mexico

law enforcement academy." *Id.* at 10, ¶ 3 (internal quotation marks omitted).

Finally, Plaintiff alleges that liability for the Eighth Amendment claim is attributable to the

County in two ways.  First, Plaintiff reasserts that the County is liable under respondeat superior for

the acts of LCDC and all of its employees who "caused or contributed to injuries received by Mr. Ramsey while he was in their custody and control." *See Id.* at 9, ¶ 3 (first ¶ 3 on the page). Second, Plaintiff asserts that the County is liable under § 1983 for its "deliberate indifference to constitutional rights" for "allow[ing] individuals to work as guards at the detention facility without adequate training." *Id.* at 10, ¶ 4.

### B. STANDARD FOR MOTION TO AMEND

A party may amend its pleading once as a matter of course within twenty-one days after serving it, or, if the pleading is one to which a responsive pleading is required, within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), whichever is earliest. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The decision to grant leave is within the court's discretion. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994). A court may deny leave to amend if granting the amendment would be futile. *Grossman*, 120 F.3d at 1126. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). The issue here is whether Plaintiff's Proposed Amended Complaint would be futile with respect to Plaintiff's claims against the County.

11

### C.   FALSE IMPRISONMENT CLAIM

#### 1.   ANALYSIS

Plaintiff's Proposed Amended Complaint does not cure his failure to allege sufficient facts to support a claim for false imprisonment against the County.  The new facts alleged therein do not alter the fact that legal process was instituted against Mr. Ramsey in the underlying criminal case before the alleged false imprisonment occurred, which makes his claim for false imprisonment a legal impossibility. The Court finds, therefore, that Plaintiff's Motion to Amend would be futile as to the false imprisonment claim.

### D.   CRUEL AND UNUSUAL PUNISHMENT CLAIM

#### 1.   ARGUMENTS

Plaintiff seeks to hold the County liable for Mr. Ramsey's physical injuries through theories of respondeat superior and municipal liability. *See* Proposed Amended Complaint [Doc. 18-1] at 9, ¶ 3 (first ¶ 3 on the page) (County liable under respondeat superior); at 10, ¶ 4 (County liable because it was deliberately indifferent to the inadequacy of LCDC jailer training). Based on statements allegedly made by past and present employees of LCDC, Plaintiff claims that the County has a regular policy of hiring individuals "who have no previous training in law enforcement." *Id.* at 9, ¶ 3. Plaintiff alleges further that these newly hired individuals receive their training on the job by other employees of LCDC, "many of whom had themselves received the same on-the-job training without formal training in law enforcement." *Id.* at 9–10, ¶ 3. Plaintiff also argues that the County's failure to properly train its jailers violates NMSA 1978, § 33-3-28(B).

12

The County argues, first, that the Motion to Amend should be denied as to the Eighth Amendment claim because the County cannot be held liable under respondeat superior. Response to Motion to Amend [Doc. 20] at 4.  Second, the County argues that it cannot be held liable because the Proposed Amended Complaint fails to allege that it had a "policy or custom" that led to the purported Eighth Amendment violation. *Id.* at 5–6. Specifically, the County argues that Plaintiff fails to allege that "'the need for more or different training is so obvious, and that the inadequacy is so likely to result in a violation of constitutional rights, that the policy makers of [the County] can be reasonably said to have been deliberately indifferent to the need'" for that training.  *Id.* at 6 (quoting *City of Canton*, 489 U.S. at 390).

In his Reply, Plaintiff concedes that the County cannot be held liable under a theory of respondeat superior. Reply to Motion to Amend [Doc. 21] at 7. Instead, he argues that, in addition to the allegation that Mr. Ramsey's injuries resulted from the infliction or the allowance of infliction of injuries consistent with a beating, (1) Mr. Ramsey had a known "falling condition," (2) LCDC employees prevented him from obtaining medical treatment for that condition, and (3) such conduct establishes deliberate indifference on part of the County. *Id.* at 8–10.

## 2.    STANDARD

It is well-settled that a municipality cannot be held liable for a § 1983 violation under respondeat superior.  *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, § 1983 is specific in authorizing claims only against a "person who, under color of any statute, ordinance, regulation, custom or usage" deprived another of his federal constitutional or statutory rights. 42 U.S.C. § 1983. Generally, a party who asserts a claim for relief under § 1983 must satisfy two

elements: (1) "the plaintiff must allege that some person has deprived him of a federal right," and (2) "he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

There is a second way of obtaining relief under § 1983. In *Monell*, the Supreme Court recognized that a practice may be so persistent and wide-spread that it constitutes a "custom or usage" having the force of law, even though it has "not received formal approval through the body's official decisionmaking channels." 436 U.S. 690–91.

> Congress included customs and usages [in § 1983] because of the persistent and widespread discriminatory practices of state officials . . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law.

*Id.* (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). Therefore, a municipality may be held liable under § 1983 when it has a "policy or custom" that results in a constitutional harm. *Id.* at 694.

In the Tenth Circuit, a "policy or custom" in the § 1983 context may take five different forms, including the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused." *Id.* (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010)). A pattern of similar constitutional violations is "ordinarily necessary" to demonstrate deliberate indifference for purposes of a failure-to-train claim. *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (quoting *Bryan Cnty.*, 520 U.S. at 409). Failing to show such a pattern, the plaintiff must show that the need for "more or different training is *so obvious*, and the inadequacy *so likely* to result in the violation

14

of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need" for training. *City of Canton*, 489 U.S. at 390 (emphases added); *accord Connick*, 131 S. Ct. at 1361. Finally, it is not enough to show that there are general deficiencies in a municipality's training program for its employees. *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). Instead, a plaintiff must identify a specific deficiency in the training program that is closely related to the alleged injury, and he must prove that the deficiency in training actually caused the employee to act with deliberate indifference to his safety. *Id.* (citing *City of Canton*, 489 U.S. at 391); *see also Bryson*, 627 F.3d at 788 (plaintiff must show a "direct causal link" between the policy or custom and the alleged injury) (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)); *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (plaintiff must show an "affirmative link" between the municipality's policy or custom and the alleged constitutional violation).

In *Bryson*, the plaintiff was convicted of a rape and kidnapping he did not commit. 627 F.3d at 787. At his trial, a forensic chemist employed by the Oklahoma City Police Department, Joyce Gilchrist, testified that hair and semen found at the crime scene were consistent with samples taken from Bryson. *Id.* After being incarcerated for seventeen years, Bryson's conviction was vacated based on exculpatory DNA test results. *Id.* It was later discovered that Gilchrist's own lab results indicated that Bryson could not be the donor of the semen found at the scene, contrary to Gilchrist's trial testimony. *Id.* Bryson was released from prison and, three years later, the charges against him were dismissed. *Id.* He subsequently filed a § 1983 action against Gilchrist and the City and obtained a judgment against Gilchrist. *Id.* However, the district court granted summary

15

judgment to the City, holding that the undisputed evidence did not support a finding of municipal liability. *Id.* Bryson appealed. *Id.*

On appeal to the Tenth Circuit, Bryson argued that the City failed to properly train Gilchrist, and then failed to provide meaningful supervision or additional training to her during her twenty-one-year career in the police department's forensic lab. *Id.* at 789. He argued further that such deficient training and supervision supported a finding of "deliberate indifference" on the part of the City, and that Gilchrist's wrongful actions were "a highly predictable or plainly obvious consequence of the relatively short technical training period . . . for the City's forensic chemists." *Id.* The Tenth Circuit disagreed and rejected Bryson's argument:

> We are not persuaded . . . that it was highly predictable or plainly obvious that a forensic chemist would decide to falsify test reports and conceal evidence if she received only nine months of on-the-job training and was not supervised by an individual with a background in forensic science.

*Id.* Finding no link between the alleged failure to train and Bryson's claim of deliberate indifference, the Tenth Circuit affirmed the summary judgment in favor of the City. *Id.* at 792.

In *Connick v. Thompson*, Thompson's underlying criminal conviction was vacated when it was shown that the prosecution had failed to disclose exculpatory evidence in violation of Thompson's rights under *Brady v. Maryland*, 373 U.S. 83 (1963). *Connick*, 131 S. Ct. at 1355. Thompson argued that the district attorney's office was liable under § 1983 for failing to train its attorneys on the constitutional requirement of disclosing exculpatory evidence. *Id.* at 1357. Thompson could not show a pattern of similar constitutional violations by untrained employees, which the Court noted "is 'ordinarily necessary' to demonstrate deliberate indifference for purposes

of failure to train." *Id.* at 1360 (quoting *Bryan Cnty.*, 520 U.S. at 409). Thompson conceded he could not show a pattern of similar *Brady* violations.  Instead, he argued that the *Brady* violation in his case was the "obvious" consequence of failing to provide specific *Brady* training, and that this showing of "obviousness" could substitute for the pattern of similar violations ordinarily necessary to establish municipal liability. *Id.* at 1360.

The Supreme Court rejected Thompson's argument. After reviewing in detail the legal and professional education and training lawyers must obtain—both in school and in practice—the Court concluded, "[i]n light of this regime of legal training and professional responsibility, recurring constitutional violations are not the 'obvious consequence' of failing to provide prosecutors with formal in-house training about how to obey the law." *Id.* at 1363 (quoting *Bryan Cnty.*, 520 U.S. at 409).

And in *Lopez v. LeMaster*, Lopez was arrested and detained in a county jail. 172 F.3d at 758. He was placed in a general population cell, where two other inmates threatened to beat him. *Id.* at 759. The jailer denied his request to be removed from the cell after the threat, and subsequently the two other inmates severely beat him. *Id.*  Lopez requested a visit to the hospital. The night-shift jailer told him that there was no need to take him to the hospital because he was still conscious. *Id.* He was released from the jail the next morning and went to a hospital, where the treating physician diagnosed him with "severe contusion to the skull with post-concussion syndrome."  *Id.* Lopez sued both Jackson County and Jackson County Sheriff LeMaster, in his individual and official capacities, for failing to protect him from his attackers by failing to provide adequate training and supervision to the jailers. *Id.* at 760. In support of his claim against the

County, Lopez offered the testimony of a former jailer who testified that he received no formal training while at the jail. *Id.* Lopez also pointed to two citations for deficiencies in its jailer training that state inspectors had issued against the jail in the preceding three years. *Id.* The district court granted summary judgment in favor of Sheriff LeMaster and the County on Lopez' failure-to-train claim. *Id.* at 759. The Tenth Circuit affirmed the judgment, holding that Lopez' evidence showed, at best, only *general* deficiencies in the sheriff's training program for jailers, rather than a *specific* deficiency in the training that *closely* related to the jailer's acting with deliberate indifference to Lopez' physical safety. *Id.* at 760.

### 3.   ANALYSIS

#### a.   RESPONDEAT SUPERIOR

Plaintiff concedes that a municipal government cannot be held liable under a theory of respondeat superior in a § 1983 claim. Reply to Motion to Amend [Doc. 21] at 7. Thus, the Motion to Amend is futile to the extent it would seek to impose respondeat superior liability on the County.

#### b.   CUSTOM AND POLICY

To the extent that Plaintiff attempts to establish the County's liability by arguing that it had a "custom or policy" that was causally linked to the constitutional violation, the Proposed Amended Complaint fails to allege facts that would establish such liability.

First, Plaintiff fails to allege an affirmative, causal link between the alleged lack of training and the alleged constitutional harm. Plaintiff also fails to allege a specific deficiency in the training

of LCDC jailers that resulted in the alleged physical injury to Mr. Ramsey.[4]  As in *Lopez*, the Plaintiff's Proposed Amended Complaint alleges, at best, a general deficiency in jailer training at LCDC.  The alleged inadequacy is that LCDC trains its jailers on the job instead of requiring them to undergo formal, but *general*, law enforcement training.  Proposed Amended Complaint [Doc. 18-1] at 9–10, ¶¶ 3–4.  The Proposed Amended Complaint simply does not allege a *specific* deficiency in the training that *closely* relates to the LCDC jailers acting with deliberate indifference to Mr. Ramsey's physical safety.  Because the Proposed Amended Complaint fails to allege a causal link between the inadequate training and Mr. Ramsey's physical injuries, it fails to state a claim against the County.

Second, even if the allegations of the Proposed Amended Complaint are taken as true, Plaintiff fails to allege any facts that would indicate that the County's hiring policy evidences deliberate indifference to the rights of Mr. Ramsey.  Plaintiff does not, for example, allege a pattern of similar constitutional violations. *See Connick*, 131 S. Ct. at 1360 (evidence of similar constitutional violations is "ordinarily necessary" to demonstrate deliberate indifference). Plaintiff argues—but fails to allege in his Proposed Amended Complaint—that the need for additional training is so obvious, and the inadequacy of the LCDC's jailers' training so likely to result in the constitutional violations he alleges, that the County can reasonably be said to have been deliberately indifferent. Reply to Motion to Amend [Doc. 21] at 8.  But as the Supreme Court noted in *Connick*,

---

[4] Plaintiff argues that the causal connection between hiring employees without prior law enforcement training and the alleged injury to Mr. Ramsey "would appear to be sufficiently obvious." Reply to Motion to Amend [Doc. 21] at 8. The Court disagrees. Neither Plaintiff's Proposed Amended Complaint nor his briefing make clear the connection between the alleged misconduct (hiring employees without prior law enforcement expertise) and the alleged constitutional violation (the infliction or the allowance of infliction of injuries consistent with a beating or the failure to provide medical attention).

"deliberate indifference" is a stringent standard of fault. 131 S. Ct. at 1360. Here, it is alleged that the LCDC jailers receive on-the-job-training, Proposed Amended Complaint [Doc. 18-1] at 9–10, ¶ 3, yet Plaintiff makes no attempt to explain how formal law enforcement training in lieu of on-the-job training would have prevented the violations of Mr. Ramsey's Eighth Amendment rights. Even assuming that LCDC jailers receive only on-the-job training, as was the case in *Bryson*, it does not necessarily follow that such training increased the likelihood that Mr. Ramsey's Eighth Amendment rights would be violated. Plaintiff fails to allege facts that, if true, would establish a direct causal link between the County's hiring policies and the alleged violation of Mr. Ramsey's constitutional rights. *See Bryson*, 627 F.3d at 789. The Proposed Amended Complaint, therefore, fails to state a claim against the County.

Finally, Plaintiff's reliance on NMSA 1978, § 33-3-28(B) is misplaced. The statute does not, as Plaintiff suggests, mandate law enforcement training for jailers; it merely exempts certain jailers from attending the basic training program for law enforcement officers. NMSA 1978, § 33-3-28(B). Subsection A of the statute provides that "[j]ailers and any employee of a local jail . . . shall have the power of a peace officer with respect to arrests and enforcement of laws when on the premises of a local jail [and] shall be deemed law enforcement officers for purposes of the [New Mexico] Tort Claims Act . . . ." NMSA 1978, § 33-3-28(A). Subsection B then provides, "[j]ailers who are employees of an independent contractor shall not be required to attend the basic training program for law enforcement officers at the New Mexico law enforcement academy." NMSA 1978, § 33-3-28(B). The clear intent of the statute is to bestow upon employees of independent jail contractors the authority of peace officers (and the concomitant New Mexico Tort Claims Act

liability) without requiring them to attend the New Mexico law enforcement academy. In any event, even if the statute were applicable, Plaintiff fails to allege a causal link between the failure to train and the alleged injury and therefore fails to state a claim of municipal liability against the County.

      **IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant Board of County Commissioner's [sic] Motion to Dismiss [Doc. 3] is **GRANTED**;

      **IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Board of County Commissioners are hereby **DISMISSED with prejudice**;

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint [Doc. 18] is **DENIED** for futility as to Defendant Board of County Commissioners; and

      **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint [Doc. 18] is **GRANTED** with respect to the remaining Defendants.  Plaintiff is granted leave to file his Amended Complaint within the next ten days.

      **IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**